IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MANUELITA CASIQUE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:24-CV-00004 |
| | § | |
| MEMORIAL CITY CARDIOLOGY | § | |
| ASSOCIATES DBA MEMORIAL | § | |
| KATY CARDIOLOGY ASSOCIATES, | § | |
| ERICA DINH, INDIVIDUALLY, | § | |
| MAYRA FLORES, INDIVIDUALLY, | § | |
| KARINA ZALOCHA, INDIVIDUALLY, | § | |
| & MELISSA GARIBAY, INDIVIDUALLY. | § | |
| Defendants. | § | HARRIS COUNTY, TEXAS |

**PLAINTIFF'S FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff, MANUELITA CASIQUE (hereafter referred to as "Plaintiff" or "Ms. Casique"), by and through the undersigned counsel, and, pursuant to FRCP 15(a)(1) hereby amends its lawsuit against the Defendants, MEMORIAL CITY CARDIOLOGY ASSOCIATES DBA MEMORIAL KATY CARDIOLOGY ASSOCIATES, ERICA DINH, INDIVIDUALLY, MAYRA FLORES, INDIVIDUALLY,  KARINA ZALOCHA, INDIVIDUALLY, & MELISSA GARIBAY, INDIVIDUALLY (jointly referred to as "Defendants," herein), and in support thereof alleges as follows:

## I. INTRODUCTION

1.      This is an action by Plaintiff against Defendants under the Family Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*, for interfering with and denying Plaintiff's FMLA leave rights and for retaliating against Plaintiff for requesting and taking FMLA leave, by refusing to

restore Plaintiff to her previous held and available position and transferring her to an office over an hour from her residence thereby effectively terminating Plaintiff's employment.

## II. JURISDICTION AND VENUE

2.    Jurisdiction is conferred on this Court by 28 U.S.C. §1331.

3.    Venue is proper in this district under 28 U.S.C. §1391(b)(2).

## IV. PARTIES

4.    Plaintiff is an individual who resides in Cypress, Harris County, Texas.

5.    Defendant, MEMORIAL CITY CARDIOLOGY ASSOCIATES DBA MEMORIAL KATY CARDIOLOGY ASSOCIATES, is a professional association formed and existing under the laws of the State of Texas and at all times material to this complaint, maintained and operated a business in Harris County, Texas, and has appeared and answered.

6.    Defendant, ERICA DINH, INDIVIDUALLY, is an individual who, at all times material to this complaint, worked in Harris County, Texas, and has appeared and answered.

7.    Defendant, MAYRA FLORES, INDIVIDUALLY, is an individual who, at all times material to this complaint, worked in Harris County, Texas, and has appeared and answered.

8.    Defendant, KARINA ZALOCHA, INDIVIDUALLY, is an individual who, at all times material to this complaint, worked in Harris County, Texas, and has appeared and answered.

9.    Defendant, MELISSA GARIBAY, INDIVIDUALLY, is an individual who, at all times material to this complaint, worked in Harris County, Texas, and has appeared and answered.

## V. <u>FACTS</u>

10.    MEMORIAL CITY CARDIOLOGY ASSOCIATES DBA MEMORIAL KATY CARDIOLOGY ASSOCIATES (HEREAFTER REFERRED TO AS ("MKC") is a medical organization operating in Houston and its surrounding cities.

11.    Ms. Casique began working for MKC on or about July 12, 2021.

12.    Ms. Casique works as a front desk lead in MKC's Cypress clinic.

13.    On or about August of 2023, Ms. Casique's daughter began suffering from severe neurological issues that mimicked seizures.

14.    Ms. Casique's daughter's condition resulted in multiple inpatient hospital visits and extensive testing.

15.    Ms. Casique requested FMLA leave to care for her daughter.

16.    MKC granted Ms. Casique's FMLA leave from September 8, 2023, to December 1, 2023.

17.    On October 12, 2023, Ms. Casique notified MKC that she would return to work early.

18.    Later on October 12, 2023,, Ms. Casique's supervisor, Erica, notified her that her Front Desk Lead position was being given to another employee, Taylor Borjas.

19.    Erica said, "I feel like you've been under a lot of stress. I was hesitant but made this decision after a lot of thought."

20.    Apparently, Erica considered herself medically qualified to assess Ms. Casique's current physical and mental capabilities without having physically seen Ms. Casique since September 8, 2023.

21.    The next day, on October 13, 2023, Erica emailed MKC's employees congratulating Taylor for her promotion.

22. By doing so Erica finalized Ms. Casique's demotion the day after Ms. Casique announced her return to work.

23. Later that day, Ms. Casique called and complained about her demotion to Mayra Flores in Human Resources.

24. Ms. Casique also complained about Erica's violation of her FMLA rights to Mayra Flores.

25. After the complaint, Mayra discussed placing Ms. Casique in another front desk position at MKC's Cypress clinic, where Ms. Casique currently worked.

26. Mayra also discussed placing Ms. Casique in or in one of two vacant patient care coordinator ("PCC") positions at the Memorial City clinic.

27. The PCC positions were with a different team which Erica did not supervise.

28. None of the positions discussed by Mayra were a lead position.

29. On October 24, 2023, Mayra texted Ms. Casique to inform her that she and Erica "... think [we] already spoke to Jasmine about moving to Cypress ..." and that the Memorial City PCC Supervisor, Melissa Garibay, said that she had promised the PCC positions to two other current employees, namely Cynthia (who was then working in Katy) and Veronica (working at another distant location).

30. Before moving to the Cypress clinic, Jasmine worked at Memorial Methodist West ("MMW") between Houston and Katy.

31. Jasmine lived about 5 minutes from the MMW clinic.

32. She had no desire to work in the Cypress area.

33. The Cypress clinic was at least a 40-minute commute from Jasmine's home.

34. MKC required that Jasmine move into Ms. Casique's position.

35.    Cynthia and Veronica both lived in Memorial City.

36.    Before moving to the Cypress clinic, their work locations were further from where they lived than the Cypress clinic.

37.    Their moves were, at least in part, for their preference and convenience.

38.    Mayra represented to Ms. Casique that the only position open for her was in Katy, Texas.

39.    Katy, Texas, was about an hour away from where Ms. Casique lived in Houston traffic.

40.    On October 26, 2023, Karina Zalocha emailed Ms. Casique demanding a response regarding the positions in Katy. Ms. Casique responded that she could not accept the position given the distance.

41.    In response, Karina admitted in part, "The commute to the Katy office is indeed a significant challenge, and we respect your decision not to pursue positions in that location. ... We want to express my [sic] gratitude for the time you've spent with us and the valuable contributions you've made to the team. Your work and dedication have not gone unnoticed ... Your resilience and positive attitude, even during difficult times, have been commendable."

42.    Then Mayra Flores commented in part, "We appreciate all your hard work and dedication to MKC."

43.    Not only do these facts show multiple blatant violations of the FMLA, but they also establish particular cruelty.

44.    MKC, Erica Dinh, Mayra Flores, Karina Zalocha, and Melissa Garibay effectively terminated Ms. Casique's employment during an **acknowledged** extremely difficult period, adding unemployment to her list of debilitating mental stressors.

46.  On November 6, 2023, the undersigned sent a letter notifying Defendants of Ms. Casique's claims under the FMLA.

47.  After receiving the letter Defendants engaged an attorney.

48.  On December 5, 2023, MKC rehired Ms. Casique in her former front desk lead position in MKC's Cypress clinic.

49.  This move was made disingenuously and tactically to minimize Defendants' liability to Ms. Casique.

50.  Defendants refuse to compensate Ms. Casique for her near month of unemployment.

51.  Defendants excuse for refusing to compensate Ms. Casique for her unemployment is that they had previously offered Ms. Casique the non-lead position in Katy.

52.  The position in Katy was still a demotion in terms of the authority she previously had as a lead.

53.  MKC's transfer of Ms. Casique's position to Katy is an express violation of the FLMA.

54.  On December 5, 2024, the day she returned to work, Ms. Casique was notified that her lead position would now be split in two.

55.  Ms. Casique was told that she would share the lead position with Taylor Borjas.

56.  Taylor Borjas was the person who took Ms. Casique's position after Ms. Casique announced that she was returning from FMLA leave,

57.  Ms. Casique was told that going forward, all decisions "will have to be made together" between them.

58.  This is a substantial reduction in authority.

59.  This constitutes retaliation.

60.    Second, Ms. Casique has already been subjected to substantial scrutiny by the individual defendants in this matter.

61.    Before Ms. Casique's termination, it was rare for any of the individual Defendants to make an appearance in the Cypress office.

62.    However, on Ms. Casique's first day back, all 4 defendants were in the Cypress office together.

63.    Before Ms. Casique's termination, Erica would barely show up once a week. However, she showed up December 5 and was scheduled for December 6.

64.    Erica changed her previous schedule to make these appearances.

65.    Further, Ms. Garibay, rarely ever came to Cypress.

66.    Cypress is a much slower office.

67.    Ms. Flores and Ms. Zalocha virtually never came to the Cypress office, "unless there was a problem."

68.    Upon departing, Ms. Zalocha stated, "see you next week."

69.    A complaint was made regarding this retaliatory behavior on December 5, 2024.

70.    As of today, January 19, 2024, no response has been received to this complaint.

71.    Further, new duties were assigned to Ms. Casique.

72.    In addition to making office referrals, she was assigned to complete all of the testing referrals.

73.    In addition, Ms. Casique was now required to meet a minimum quota of answering 50 calls per week.

74.    However, Ms. Casique's referrals are made on the telephone.

75.    Therefore, it is impossible for Ms. Casique cannot meet said quota.

76. Accordingly, Defendants are setting Ms. Casique up to fail so that they may complete their retaliation.

77. All conditions precedent to this lawsuit have been performed, have occurred, have been waived, or have lapsed.

## VI. CAUSE OF ACTION

### A.    FAMILY MEDICAL LEAVE ACT VIOLATIONS

78. Plaintiff incorporates herein by reference the allegations contained in the preceding paragraphs as if set forth fully.

79. Plaintiff has satisfied all jurisdictional prerequisites in connection with this claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et. seq.

### 1. FMLA Coverage

80. At all times relevant hereto, Plaintiff was an "eligible employee" as defined by 29 U.S.C. §2611(2) of the FMLA because she worked for Defendants for at least 12 months and at least 1250 hours of service during the previous 12-month period before she first requested and took FMLA leave.

81. At all times relevant hereto, Plaintiff was also an "individual" (as distinct from an "eligible employee") entitled to be free from discrimination and retaliation as set out in 29 U.S.C. §2615(a)(2) & (b).

82. At all times relevant hereto, Plaintiff had a "serious health condition" in that she suffered from an illness, ... impairment, or ... or mental condition that involved continuing treatment by a healthcare provider. 29 U.S.C. §2611(11).

83.     At all times relevant hereto, MKC was an "employer" under the FMLA because they were a "person" engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year, at or within a seventy-five (75) mile radius of, the location where Plaintiff worked. *See* 29 U.S.C. §2611(4)(A)(i) & §2611(2)(B)(ii).

84.     At all times relevant hereto, MKC was an "employer" under the FMLA because they were a "person" who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer. *See* 29 U.S.C. §2611(4)(A)(ii).

85.     At all times relevant hereto, Erica Dinh, Mayra Flores, Karina Zalocha, and Melissa Garibay were each an "employer" under the FMLA because each was a "person" who acted, directly or indirectly, in the interest of an employer, namely, MKC, to any of the employees of such employer. *See* 29 U.S.C. §2611(4)(A)(ii).

86.     At all times relevant hereto, Defendants were a "person" under the FMLA, the definition of which includes an "individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." *See* 29 U.S.C. §2611(7) citing 29 U.S.C. §203(a).

87.     As to Erica Dinh, Mayra Flores, Karina Zalocha, and Melissa Garibay's individual liability under the FMLA, the Fifth Circuit, like the clear majority of courts that have considered the issue, looks to the FLSA when interpreting the reach of the term "employer" under the FLSA. *Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006) (noting the similarity of the definitions of "employer" under the FMLA and the FLSA when analyzing the reach of individual liability under the FMLA).  At all times relevant hereto, Erica Dinh, Mayra Flores,

Karina Zalocha, and Melissa Garibay are each individually liable as an employer under this standard because each "effectively dominate[d] [MKC's] administration or otherwise act[ed], or ha[d] the power to act, on behalf of the [companies] vis-a-vis its employees." *Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993). Further, GILBERT "independently exercise[d] control over the work situation." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984). Erica Dinh, Mayra Flores, Karina Zalocha, and Melissa Garibay are each individually liable because they authorized compliance with the ... Act." *Id.* at 972

2. FMLA Violations

88. The Family and Medical Leave Act of 1993, as amended ("FMLA"), allows Plaintiff, as an eligible employee of MKC (which was a covered employer), to take job-protected, unpaid leave or to substitute appropriate paid leave if the employee has earned or accrued it, for up to a total of 12 workweeks in any 12 months (*see* § 825.200(b)) because the Plaintiff is needed to care for a family member (her child) who had a serious health condition. 29 CFR § 825.100(a).

89. Plaintiff, as an eligible employee, was "entitled, on return from such leave—(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. §2614(a)(1)(A)-(B).

90. The taking of FMLA leave cannot result in the loss of any benefit that accrued prior to the start of the leave," and "An equivalent position must have substantially similar duties, conditions, responsibilities, privileges and status as the employee's original position." 29 CFR § 825.100(a), and 29 C.F.R. § 825.215(e).

91. The FMLA requires that "[t]he employee must be reinstated to the same or a geographically proximate worksite (i.e., one that does not involve a significant increase in commuting time or distance) from where the employee had previously been employed." 29 C.F.R. § 825.215(e)(1).

92. Plaintiff, as an eligible employee, was entitled to maintain and not lose any employment benefit accrued prior to the date on which her FMLA leave commenced. 29 U.S.C. §2614(a)(2).

93. Plaintiff, as an eligible employee, was entitled to have Defendants maintain coverage under any group health plan for the duration of such leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave. 29 U.S.C. §2614(c)(1).

94. Defendants interfered with, restrained, and denied the exercise of and the attempted exercise of Plaintiff's FMLA rights by refusing to restore Plaintiff to her previously held or an equivalent position or to the same or a geographically proximate worksite, thereby effectively terminating her. 29 U.S.C. §2615(a)(1); 29 C.F.R. § 825.215(e)(1); 29 C.F.R. § 825.300(e).

95. Defendants discriminated and retaliated against Plaintiff for opposing a practice made unlawful by the FMLA and for exercising her right to take FMLA leave by effectively terminating her. 29 U.S.C. §2615(a)(1); *Haley v. All. Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).

96. Plaintiff engaged in activity protected by the FMLA. Defendants subjected Plaintiff to an adverse employment action. There is a causal link between the protected activity and the adverse employment action. Defendants' reasons for adverse employment are not legitimate, nondiscriminatory, or nonretaliatory but, rather, are a pretext for discrimination and

retaliation. *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 832 (5th Cir. 2020). At the very least, Plaintiff's exercise of and the attempted exercise of Plaintiff's FMLA rights was a motivating factor in the decision to terminate Plaintiff and, as such, was the cause of Plaintiff's damages, as set forth below.

97.   Defendants violated Plaintiff's FMLA rights by failing to restore Plaintiff to her former or equivalent position or to the same or a geographically proximate worksite with equivalent employment benefits, terms, and conditions; by effectively terminating her; by effectively terminating her health insurance benefits; and by retaliating and discrimination against her for making a complaint about a violation of the FMLA. 29 U.S.C. §2615(a)(1); 29 C.F.R. § 825.215(e)(1); 29 C.F.R. § 825.300(e); 29 U.S.C. §2615(a)(1); *Haley v. All. Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).

98.   Defendants violated Plaintiff's prescriptive and proscriptive rights under the FMLA. *See* 29 U.S.C. §2615(a) and 29 U.S.C. §2615(b).

99.   Defendants violated 29 U.S.C. §2612, §2614, §2615(a) & (b).

100.  Defendants acted willfully and intentionally in violating Plaintiff's rights under the FMLA.

          3. <u>Damages</u>

101.  As a result of the Defendants' violations of the FMLA, Plaintiff has suffered damages in the form of lost wages in the past (back pay) and will continue to suffer lost wages in the future (front pay). Plaintiff has also suffered damages in the form of lost employment benefits in the past and will continue to suffer lost benefits in the future. 29 U.S.C. §2617(a)(1)(A)(i).

102.  As a result of the Defendants' violations of the FMLA, Plaintiff has suffered damages in the form of out-of-pocket medical expenses in the past and will continue to suffer the same in the

future. 29 U.S.C. §2617(a)(1)(A)(i).

103.    Plaintiff is entitled to recover interest at the prevailing rate on the amount of her damages described above.

104.    Plaintiff is entitled to an additional amount as liquidated damages equal to the sum of Plaintiff's damages and the interest described above because Defendants' acts and omissions that violated the FMLA were not in good faith and because Defendants did not have reasonable grounds to believe that their acts and omissions were not in violation of the FMLA. See 29 U.S.C. §2617(a)(1)(A)(iii). Defendants intentionally and willfully violated the FMLA,

105.    As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including the loss of past and future lost income, back wages or back pay, future wages or front pay, interest on back pay and front pay, employment benefits in the past and future, earnings in the past and future, benefits under the contract or employment relationship, compensatory damages, pecuniary damages, mental anguish or emotional pain and suffering inconvenience, and loss of enjoyment of life in the past and the future.

## B.    INCONSISTENT CAUSES OF ACTION AND THEORIES

106.    To the extent that any causes of action or theories of liability pled by Plaintiff are deemed inconsistent, said inconsistent causes of action and/or theories are intended to be pled "In the Alternative."

## VII. ATTORNEY'S FEES

107.    29 U.S.C. 2617(a)(3) provides that the Court, in an FMLA action, shall, in addition to any judgment awarded to the Plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the Defendants. Plaintiff had to engage the

undersigned counsel to assert the above-referenced claims against the Defendants. Therefore, Plaintiff seeks reasonable attorney's fees, reasonable expert witness fees, and other costs of the action from Defendant(s) under the FMLA.

## VIII. <u>JURY TRIAL</u>

108.    Plaintiff hereby demands a trial by jury of all claims and issues in this cause.

## IX. <u>PRAYER FOR RELIEF</u>

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that the Defendants be cited to appear and answer herein and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants as follows:

a.    actual damages;

b.    general damages;

c.    consequential damages;

d.    compensatory damages;

e.    special damages;

f.    statutory damages and penalties;

g.    liquidated damages;

h.    equitable damages;

i.    equitable relief;

j.    benefit of the bargain damages;

k.    specific performance;

l.    exemplary damages;

m.    punitive damages;

n.      prejudgment and post-judgment interest as provided by law;

o.      costs of suit;

p.      reasonable attorneys' fees and expenses;

q.      reasonable expert witness fees; and

q.      such other and further relief to which Plaintiff is justly entitled.

Respectfully submitted,

THE LAW OFFICE OF JACK QUENTIN NICHOLS

/s/ Jack Nichols
Jack Nichols
State Bar No. 24002692
500 N. Capital of Texas Highway
Building Two, Suite 306
Austin, Texas, 78746
(512) 595-1269
Email : jack@jqnlaw.com

ATTORNEY FOR PLAINITFF
MANUELITA CASIQUE

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served in accordance with the Federal Rules of Civil Procedure upon the following counsel as indicated below on January 19, 2023:

BY E-SERVICE:

Amanda C. Croushore
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Allen Center
500 Dallas Street, Suite 3000
Houston, TX 77002
amanda.croushore@ogletree.com

/s/Jack Quentin Nichols